Karen RITCHIE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–93.

Court of Criminal Appeals of Oklahoma.

Aug. 10; 1981.

Kevin Murphy, Ponca City, for appellant.

Jan Eric Cartwright, Atty. Gen., Reta Strubhar, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Karen Sue Ritchie, was tried for the crime of Murder in the Second Degree in Case No. CRF–78–20, in the District Court of Kay County. A jury found the appellant guilty as charged and fixed punishment at seventy-five (75) years' im- ·prisonment.

Early on the morning of February 6, 1978, three (3) year old Suzanne Ritchie arrived at the Ponca City Hospital. Despite a valiant rescue attempt, the child was pronounced dead shortly after her arrival. A preliminary observation of the child's body revealed numerous contusions, wounds and teeth marks. The police were summoned to investigate what was apparently a vicious attach directed at the deceased. Their investigation began with the two individuals who had brought the child to the emergency room: Appellant, Karen Sue Ritchie, the child's mother, and Robert Ray Wilson, who was to become a co-defendant. Later that day the appellant admitted striking the de-

ceased with her hand, a belt and a flyswatter. She further admitted that her boyfriend, Robert Ray Wilson, had severely "punished" Suzanne Ritchie throughout the preceding evening. A search of the appellant's dwelling, pursuant to a valid warrant, revealed the evidence which would corroborate her statement: a flyswatter, a belt, a plastic pipe and shoestrings used to bind the deceased. Despite her statement to the police and her subsequent testimony, the appellant maintained that she had pleaded with Wilson to cease his brutal onslaught, but was ineffectual in gaining his compliance.

The appellant's first and fourth assignments of error are of such nature as to make discussion of most of her subsequent assignments of error unnecessary. The appellant complains that the admission of certain photographic evidence was reversible error in that said evidence unduly inflamed and impassioned the jurors.

The controversy focuses primarily on the introduction of State's Exhibits T–6, T–18, T–19 and T–20. Exhibit T–6 is an enlarged photograph of the deceased, as she appeared prior to death. This photograph was included in the record. Unfortunately, all exhibits were not included in the record transmitted to this Court. However, the testimony of State's witness Dr. Stephen Parks, a forensic pathologist, does provide an account of what the absent photographs depicted. The Doctor described Exhibit T–18 as follows:

Q. Now, doctor, when you make first entry to the cranial area, what is the surgical process that you go through?
A. Well, I make an incision from behind one ear to behind the other ear, right over the top of the head, and through the hair, parts her hair, then make this incision. Then pull the skin back on each side, and you can also at that time examine the underlying softer tissues beneath the skin, overlying the skull.
Q. I am showing to you what has heretofore been marked as Plaintiff's Exhibit T–18 and ask you to tell us, if you will, what that is?

A. This is a picture of the underlying tissues of the skin of the skull of this person identified to me as Suzanne Ritchie.
Q. Are you familiar with that photograph, sir?
A. Yes, sir; I took the picture.

State's Exhibits T–19 and T–20 were identified by Dr. Parks in the following manner:

Q. All right, sir. I am now showing to you what has heretofore been marked as Plaintiff's Exhibit T–19 and T–20 and ask you, sir, if you can tell us what those are?
A. One is a picture of the brain of this child, and one is of the skullcap that I removed with its large blood clots being in place, which were the cause of death.

■ The admission of photographs into evidence is generally held to fall within the discretion of the trial court. *President v. State*, 602 P.2d 222 (Okl.Cr.1979). Nevertheless, this Court has developed a clear standard in reviewing the propriety of a given exercise of that discretion. Where demonstrative evidence tends to inflame the trier of fact, justice requires that such evidence have probative value. *Koonce v. State*, 456 P.2d 549 (Okl.Cr.1969); *Oxendine v. State*, 355 P.2d 940 (Okl.Cr.1958). To have probative value, that which is sought to be established must be at issue. *Breshears v. State*, 572 P.2d 561 (Okl.Cr.1956). Moreover, mere relevancy is not the test. Rather, where the evidence is both probative and prejudicial, the former must yield the greater value. *President v. State*, supra; *Oxendine v. State*, supra.

■ In *Oxendine*, supra, at 943, this Court recited in clear language:

[T]he autopsy was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and passions of the jury. This Court feels that the photos were wholly inadmissible in the form presented and their admission was an abuse of the trial court's discretion.

The photos in *Oxendine* consisted of those taken on the autopsy table showing the nude body of the deceased with the sutured incisions made by the pathologist. In the instant case, the photos were, no doubt, even more prejudicial because they showed the brain and the skullcap of the deceased child. The photos were inadmissible. The pathologist testified concerning the nature of the injuries and the cause of death. Consequently, we fail to see how Exhibits T–18, T–19 and T–20, possessed any probative value, other than to arouse the passions and prejudices of the jury.

In her fourth assignment of error, appellant complains of the admission of an enlarged photograph of the deceased child taken some time prior to the incident for which the appellant was tried. The photograph was taken from the billfold of appellant and was enlarged to ten inches by fourteen inches and was displayed on a display board throughout the trial. With each of several witnesses, the prosecutor proceeded to refer to the various photographs for the benefit of the jury. The jury should not have been concerned with what the child looked like prior to the offense committed against her, but instead it should have been concerned only with what had been done to the child, how it was done, when it was done and who did it. *Hudman v. State*, 89 Okl.Cr. 160, 205 P.2d 1175 (1949). The probative value of the enlarged photo is questionable and could be highly prejudicial. In a close case, on appeal, such a photograph may well tip the scales in appellant's favor.

Coupled with the use of the enlarged photo, the use of a billboard to display the numerous photographs could have served no other purpose other than to prejudice and arouse the passions of the jury. The arrangement of the photographs was such as to keep constantly in the presence of the jury the horrifying nature of the offense. The enlarged photo was surrounded by fifteen photos, some of which showed the child's damaged body, and the three photos taken on the autopsy table (T–18, T–19 and T–20), were placed below the enlarged photograph. In a sense, the billboard became an item of evidence notwithstanding the fact that it was never introduced into evidence. The only purpose the billboard could have served was to continuously prejudice the jury throughout the trial.

Therefore, after considering the briefs and transcript of testimony and because of the abuse of discretion by admitting prejudicial autopsy photos into the record, this Court concludes that this conviction must be reversed and remanded.

CORNISH, J., concurs.

BUSSEY, J., specially concurs.

BUSSEY, Judge, specially concurs:

While I concur that this case must be reversed and remanded because of the introduction of the photographs of the autopsy, I do not deem the introduction of the photographs of the victim prior to her death, absent other errors, to be so prejudicial as to warrant a modification or reversal.