**Ray Harold TARVER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–59.**

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1982.

Raymond Burger, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Jimmy D. Givens, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Ray Harold Tarver, appellant, was convicted of two counts of First Degree Manslaughter in Oklahoma County District Court. He was sentenced to five (5) years' imprisonment on each count, the sentences to be served consecutively.

It is undisputed that at approximately midnight on February 9, 1980, Patricia Tarver was shot in the head by her husband, Ray Tarver, with a .357 Magnum revolver in the bedroom of their apartment. Mrs. Tarver was over eight months pregnant at the time of the shooting, both mother and infant died from the gunshot wound.

The only controverted issue at trial was the motive for the killing. The State's theory was that Tarver shot his wife in anger after arguing over financial and marital problems. Tarver, however, insisted the shooting was accidental. He contends the gun discharged while he was cleaning it, when his wife accidentally shoved him as she reached across the bed.

### I

Two separate statements made by Tarver, shortly after the shooting, were introduced into evidence against him at trial. He alleges that both statements should have been excluded because they were not intelligently and voluntarily given.

Appellant's first statement was made to Officer Martin Stupka as he was being transported to the police station for questioning. Without interrogation from Officer Stupka, Tarver asked if his wife was going to be all right. The officer told him she was still alive when the ambulance left their apartment. Tarver then said, "I didn't mean to shoot her," and he further informed the officer that his wife had been "chipping around" on him. The appellant urges this Court to reverse his conviction, because Officer Stupka failed to give him the *Miranda* warnings after taking him into custody.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court clearly stated that:

> Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

It is apparent that Tarver initiated the conversation with Officer Stupka and voluntarily made the statements without any inter-

rogation from the police officer. The warnings required by *Miranda v. Arizona,* supra, are applicable only to custodial interrogation. Therefore, the trial court correctly admitted into evidence appellant's voluntary statement to Officer Stupka.

 The appellant next contends that his statement made to Detective Larry Andrews at the police station should have been suppressed. He maintains that the State failed to show that his waiver of rights was knowingly and intelligently given. He argues that he was so emotionally distraught at the time of the waiver that, even if not coerced in the normal sense, it was not "the product of a rational intellect and a free will." *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The testimony of Detective Andrews established that appellant was advised of his *Miranda* rights before he expressly waived his right to remain silent. Tarver was understandably quite emotionally upset when he made this statement. Officer Andrews testified that the statement was inconsistent and confusing. However, without more, we cannot conclude that the trial court erred in admitting the statement. A confession is not inadmissible merely because at the time it was made the accused was greatly excited, hysterical or distressed. The test is whether, despite a low emotional or mental stability, the accused voluntarily and intelligently waived his right to remain silent prior to his confession. See *Wadkins v. State,* 572 P.2d 998 (Okl.Cr.1977) and *Moles v. State,* 520 P.2d 822 (Okl.Cr.1974).

Furthermore, appellant's reliance on *Mincey v. Arizona,* supra, is ill-founded. In *Mincey,* the accused was shot and partially paralyzed, he had tubes inserted in his throat and nose in order to facilitate breathing. Mincey had been administered various drugs and the attending physician stated he was "depressed almost to the point of coma." In addition, Mincey asked repeatedly that the interrogation stop until he could obtain an attorney. This unique fact situation is hardly analogous to the instant case. The record establishes that appellant expressly waived all his *Miranda*

rights, including his right to have counsel present during questioning. Aside from his general emotional status, appellant offers no proof that his degree of disorientation rendered him unable to understand his constitutional rights prior to questioning. We therefore conclude that this contention is without foundation.

## II

 The appellant also challenges the conviction for the death of the quick child on the grounds that the State failed to prove the child's death was caused by a "willful" act on his part.

Tarver was convicted of Manslaughter in the First Degree under 21 O.S.1981, § 713, which provides:

> The *willful* killing of an unborn quick child by any injury committed upon the person of the mother of such child, and not prohibited in the next following section, is manslaughter in the first degree. (emphasis added.)

The appellant, in advancing this argument, equates "willful" with "specific intent." He claims the State did not prove that he specifically intended to kill the unborn child. The meaning of the term "willful" contained within the language of 21 O.S. 1981, § 713 has not been previously defined by this Court. In *Lamb v. State,* 293 P.2d 624 (Okl.Cr.1956), we held that the word "willfully" is equivalent to "knowingly," as opposed to "accidentally" or "involuntarily." See also, *Bohannon v. State,* 271 P.2d 739 (Okl.Cr.1954) and *Hutchman v. State,* 61 Okl.Cr. 117, 66 P.2d 99 (1937). This definition coincides with 21 O.S.1981, § 92, which provides:

> The term 'willfully' when applied to the intent with which an act is done or omitted, *implies simply a purpose or willingness to commit the act* or the omission referred to. *It does not require any intent to violate law,* or *to injure another,* or to acquire any advantage. (emphasis added.)

It follows that "willfully" refers to the actor's subjective state of mind. The prosecution must establish that the accused en-

gaged in the conduct, inflicting injury upon the person of the mother, with the awareness that the death of the unborn quick child would likely result. This interpretation of the term "willfully" is analogous to the definition of "knowingly" found in the Model Penal Code § 2.02(2)(b) (Proposed Official Draft 1962) which provides:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Therefore, a specific intent to kill the unborn quick child is not required for a conviction under 21 O.S.1981, § 713.

 In the instant case, we find that there was sufficient evidence from which the jury could infer that appellant acted "willfully" within the meaning of 21 O.S. 1981, § 713. Although the record before us is incomplete, it does suggest that Tarver had reason to believe that the unborn child was not his. Tarver stated to the police shortly after the shooting that his wife had been "chipping around" on him. His wife was over eight months pregnant at the time of the shooting, and the coroner testified that she died as a result of a contact-wound. He concluded that the muzzle of the weapon was either pressed against the victim's head or very close to the head. The jury could reasonably infer from these facts that appellant "willfully" pulled the trigger. Moreover, it is reasonable to infer that the appellant was aware that the gunshot wound inflicted on his pregnant wife would likely result in the death of the unborn quick child.

We are equally mindful of appellant's proffered defense that the shooting was entirely accidental. However, this Court's duty is not to weigh the facts. Where there is competent evidence in the record from which the jury could reasonably conclude that the appellant was guilty as charged, this Court will not interfere with the verdict even though there is sharp conflict in the evidence and different inferences may be drawn therefrom. It is the exclusive province of the jury to weigh the evidence and determine the facts. *Gray v. State,* 467 P.2d 518 (Okl.Cr.1970). Therefore, the appellant's final assignment of error is also without merit.

For the reasons heretofore stated, the judgment and sentence of the trial court is hereby AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.