Charles William DAVIS, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–85–55.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1995.

Robert Ravitz, Public Defender, Oklahoma City, for petitioner.

Susan B. Loving, Atty. Gen., Diane Blalock, Asst. Atty. Gen., Oklahoma City, for respondent.

1. 665 P.2d 1186 (Okl.Cr.1983), *cert. denied* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983).

2. *Davis v. State*, PC–85–55 (Okl.Cr. March 21, 1985), *cert. denied* 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 900 (1986).

3. *Davis v. Maynard*, 869 F.2d 1401 (10th Cir. 1989).

## OPINION ON REMAND

CHAPEL, Vice Presiding Judge.

Charles William Davis was tried by a jury before the Honorable David M. Cook and convicted of two counts of First Degree Murder in violation of 21 O.S.1991 § 701.7, in the District Court of Oklahoma County, Case Nos. CRF–77–2905 and CRF–77–2906. The jury found that the murders were especially heinous, atrocious, or cruel; that Davis was previously convicted of a felony involving the use or threat of violence to the person; and that Davis knowingly created a great risk of death to more than one person. The jury sentenced Davis to death on both counts. This Court affirmed the convictions and sentences of death in *Davis v. State*.[1]

The subsequent lengthy and complex procedural appellate history of this case follows. After the Supreme Court denied certiorari, Davis filed an Application for Post–Conviction Relief in the District Court of Oklahoma County. This Court affirmed the district court's denial of relief by unpublished order.[2] Davis then filed a Petition for Writ of Habeas Corpus in the United States District Court for the Western District of Oklahoma. Relief was denied. On appeal, the United States Court of Appeals for the Tenth Circuit upheld Davis's convictions but vacated the death sentence.[3] The Tenth Circuit held that the "anti-sympathy" instruction given in the second stage of the proceedings may have allowed the jury to discount sympathy for Davis based on mitigating evidence, and that the aggravating circumstance that the murders were especially heinous, atrocious, or cruel insufficiently limited the jury's discretion to impose the death penalty.

The United States Supreme Court granted certiorari,[4] vacated the Tenth Circuit's judgment, and remanded the case for reconsideration in light of *Saffle v. Parks*.[5] On remand,

4. *Saffle v. Davis*, 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990).

5. 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). *Saffle v. Parks* held that a challenge to a similar Oklahoma "anti-sympathy" instruction constituted a new rule which could not be applied on collateral review of a criminal judgment.

the Tenth Circuit concluded that *Saffle v. Parks* precluded it from granting any relief based on the "anti-sympathy" instruction. The court determined, however, that Davis's challenge to the aggravating circumstance that the murders were heinous, atrocious, or cruel did not create 'a new rule, and that aggravating circumstance as applied in Davis's trial was unconstitutional.[6] The Tenth Circuit affirmed the denial of the writ of habeas corpus, reversed the denial of all further relief, and remanded to the district court of the Western District with instructions to deny the writ of habeas corpus but invalidate the sentence of death.[7]

By Judgment of October 2, 1990, the district court for the Western District of Oklahoma invalidated Davis's death sentence and enjoined the execution. The Judgment indicated this action was "without prejudice to further proceedings by the state for redetermination of the sentence on the conviction." This Court was not advised of the Judgment until September 12, 1994, when it was brought to our attention by the Office of the Oklahoma Attorney General. This Court received a certified copy of the Judgment on December 20, 1994. We construe the quoted sentence as an order remanding the case to this Court and assume jurisdiction in the case.

Kathy Jones Davis was briefly married to Davis. On August 13, 1977, Dennis McLaughlin, Robert Jones, Henry Jones, and Ms. Davis went to Davis's apartment to retrieve her belongings. After her property was removed, the four gathered in the living room for a final inspection. Davis pulled a .38 caliber revolver and shot all four. Dennis McLaughlin died of two gunshot wounds to the head, and Robert Jones received one wound in the back and died of a gunshot wound to the head. Henry Jones and Ms. Davis each survived a gunshot wound to the head.

On direct appeal, this Court determined that the "especially heinous, atrocious or cruel" aggravating circumstance was factually substantiated.[8] Our complete analysis of this circumstance was:

> Accordingly we find that since appellant perpetrated a mass-murder by inflicting multiple gunshot wounds to his victims the jury was presented with sufficient evidence from which they could find the acts "atrocious" as defined in the instructions.[9]

Subsequently, the construction of this aggravating circumstance which this Court applied to similar cases was declared unconstitutionally vague; the instruction as given failed to sufficiently channel the jury's discretion or narrow the category of homicides in which the death penalty might be imposed.[10]

■ This Court has held that this aggravating circumstance is limited to those murders which are preceded by torture or serious physical abuse.[11] This construction requires some evidence of conscious physical or mental suffering prior to death.[12]

■ After independently assessing the evidence, we must agree that our original affirmance of this aggravating circumstance was in error. The State presented insufficient

---

6. The Tenth Circuit noted that this aggravator was invalid as applied. *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).

7. *Davis v. Maynard,* 911 F.2d. 415 (10th Cir. 1990).

8. Instruction eight read: You are further instructed that the term "heinous", as that term is used in these instructions means extremely wicked or shockingly evil, and that "atrocious" means outrageously wicked and vile; and "cruel" means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others; pitiless.

9. *Davis,* 665 P.2d at 1202–03.

10. *Cartwright v. Maynard,* 822 F.2d 1477, 1482 (10th Cir.1987), aff'd *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

11. *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr. 1987) (Opinion on Rehearing), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

12. *Stafford v. State,* 832 P.2d 20, 23 (Okl.Cr. 1992); *Battenfield v. State,* 816 P.2d 555, 565 (Okl.Cr.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Berget v. State,* 824 P.2d 364 (Okl.Cr.1991), *cert. denied,* — U.S. —, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992).

evidence from which a rational trier of fact could find that the murders were preceded by torture or serious physical abuse.

The evidence presented at trial indicated that the four victims were standing in a loose semi-circle opposite Davis when the shooting began. First Davis shot Henry Jones in the head. Henry Jones heard one shot and lost consciousness. Kathy Jones Davis, standing next to Henry Jones, also heard one shot and fell to the floor next to Henry. She passed out, recovered and heard some shots, and passed out again. At some point she was shot once in the head. Both Henry Jones and Kathy Jones Davis regained consciousness and saw Davis standing over them, clicking the empty gun as if attempting to fire at them. Davis ran from the apartment. Henry Jones attempted to follow Davis, then drove to a police station and was taken to the hospital. He did not see Robert Jones or Dennis McLaughlin. Kathy Jones Davis fainted again. When she woke up, Henry Jones was gone, she did not see Robert Jones, and Dennis McLaughlin was lying bleeding on the couch. She shook Dennis but was unable to wake him and left to get help. Either of McLaughlin's two gunshot wounds to the head would have been fatal. Robert Jones had one wound to the back and one fatal wound to the head. Medical evidence could not predict either victim's time of death or the order in which wounds were inflicted. No testimony indicated that the victims who died were conscious or suffered pain at any time.

█ In addition to the failed "heinous, atrocious, or cruel" aggravating circumstance the jury found that Davis was previously convicted of a felony involving the use or threat of violence to the person and that he knowingly created a great risk of death to more than one person. Davis had a previous murder conviction.[13] The evidence that Davis shot four people in the head, killing two of them, supports the "great risk of

death" aggravator. Davis's parole officer, testifying for him in the second stage of trial, said that Davis told her he felt the shootings were justified and was only sorry that Kathy had not died.

█ Davis admitted shooting all four victims but stated he acted in self-defense because he believed some of the victims might have been armed. He saw no weapons and did not warn the victims in any way before shooting. The following arguably mitigating evidence was presented during the first stage: Davis's prior conviction was for a murder committed during the course of a burglary when he was seventeen, in which he was shot three times; Davis loved Kathy Jones Davis and gave her a gun for protection; Davis neither took pills nor drank; Davis was physically smaller than Dennis McLaughlin; Davis was afraid of McLaughlin, Robert Jones, and Henry Jones, and believed they might be armed; Robert Jones had a reputation in the community for violence; Dennis McLaughlin had a bad reputation in the community and his friends were violent; and that Kathy Jones Davis had an unspecified bad reputation. The State incorporated the first stage evidence, but otherwise presented no evidence during the penalty phase. Davis also presented evidence that he was a good, dependable worker; that co-workers and friends never heard him threaten anyone; that he was a good friend; that he seemed happy in his marriage; that his record on parole was good [14]; and, through an audiotape Davis made, that he loved Kathy Jones Davis.

Instruction Eight specifically told the jury to consider whether the following mitigating circumstances applied to the facts of the case: Davis had no significant history of prior criminal activity; the murders were committed while Davis was under the influence of extreme mental or emotional disturbance; the murders were committed under circumstances which Davis believed provided

---

**13.** Davis was convicted of murder in Missouri in 1942 and received a life sentence. He escaped and was returned to prison in 1953, was paroled and had parole revoked two or three times, and was finally paroled to Oklahoma City in 1973.

**14.** Evidence showed that shortly before the crimes, Davis travelled to Sapulpa to meet with Kathy Jones Davis. As one consequence of that meeting, Henry Jones reported that Davis was carrying a gun, and Davis was arrested on a weapons charge.

a moral justification or extenuation for his conduct; Davis acted under duress or under the domination of another person; at the time of the murders, Davis's capacity to appreciate the criminality or wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or intoxication; Davis's age at the time of the crimes.[15]

■ Where one of several aggravating circumstances has been invalidated, this Court may conduct an independent reweighing of aggravating and mitigating circumstances to determine whether a verdict is factually substantiated and a death sentence is valid.[16] Nothing in appellate reweighing of aggravating circumstances is at odds with contemporary standards of fairness or inherently unreliable, and an appellate court may reweigh evidence in the absence of written jury findings concerning mitigating circumstances.[17]

■ This Court must review the aggravating and mitigating evidence to ascertain the role which the invalid "heinous, atrocious or cruel" aggravator played in the jury sentencing process.[18] We must then determine, through the reweighing process, what the jury in this case would have decided had it not considered the invalid aggravator.[19] If the failed aggravator formed the basis of the jury's decision to impose the death penalty, the sentence must be reversed.

After careful, independent review and consideration of the evidence as set forth above which supports the valid aggravating circumstances, as well as the evidence as set forth above which may be considered mitigating, this Court finds the sentence of death factually substantiated and appropriate. Davis

shot four unarmed people in the head and expressed regret that one particular victim did not die. His previous conviction for murder, and escape from prison while serving the life sentence for that crime, belie the suggestion that he had no significant history of prior criminal activity. Indeed, none of Davis's enumerated mitigating circumstances are compelling. At most, Davis's testimony indicated that he felt threatened and that some of the victims may have threatened him in the past; this evidence does not show he was under duress, morally justified, or under the influence of any type of extreme disturbance. All the evidence showed that Davis neither took drugs nor drank and had not been drinking before the crime.

Although the prosecutor during closing argument did specifically refer to the failed "heinous, atrocious or cruel" aggravator, emphasizing the pitiless nature of the crimes, only a small portion of the State's argument concerned this aggravator. The State emphasized Davis's previous conviction and the great risk of death to more than one person exemplified by the nature of the crimes.[20] Substantial evidence supports the two valid aggravating circumstances and it is clear that the jury's improper consideration of the unconstitutional aggravator did not significantly influence its decision to impose the death penalty. We therefore reaffirm our previous denial of Davis's application for post-conviction relief.

JOHNSON, P.J., and LUMPKIN, LANE and STRUBHAR, JJ., concur.

---

**15.** Davis was 52 years old at the time of the crimes.

**16.** *Stout v. State*, 817 P.2d 737, 739 (Okl.Cr. 1991); *Stouffer*, 742 P.2d at 564.

**17.** *Clemons v. Mississippi*, 494 U.S. 738, 749–51, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725 (1990); *Stafford v. State*, 832 P.2d at 24; *Battenfield*, 816 P.2d at 566–67.

**18.** *See Stringer v. Black*, 503 U.S. 222, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992).

**19.** *Richmond v. Lewis*, —— U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992); *Stringer*

*v. Black*, 503 U.S. at ——, 112 S.Ct. at 1137; *Stafford v. State*, 853 P.2d 223, 225 (Okl.Cr. 1993).

**20.** The State also discussed those elements as they related to a fourth charged aggravating circumstance, the probability that Davis would commit criminal acts of violence constituting a continuing threat to society. The jury did not find that aggravating circumstance. The prosecutor did not emphasize it unduly in argument and his references do not affect our analysis of the two remaining aggravating circumstances.