1998 OK CR 47

**Richard Stephen FAIRCHILD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–96–121.**

Court of Criminal Appeals of Oklahoma.

Aug. 20, 1998.

Sandra Stensaas, Patty E. Wallace, Oklahoma County Asst. Dist. Attys., for the State at Trial.

John Albert, Asst. Public Defender, for defendant at Trial.

Lee Ann Jones Peters, Appellate Defense Counsel, Capital Direct Appeals Div., Oklahoma Indigent Defense System, for Appellant on Appeal.

W.A. Drew Edmondson, Atty. Gen., Robert Whittaker, Asst. Atty. Gen., for Appellee on Appeal.

PER CURIAM:

¶ 1  Richard Stephen Fairchild was tried by jury and convicted of Child–Abuse Murder in the First Degree, 21 O.S.1991, § 701(C), in Oklahoma County District Court Case No. CF–93–7103. The jury found one aggravating circumstance in the second stage, that the murder was especially heinous, atrocious or cruel, and set punishment at death. The Honorable Major Wilson, District Judge, imposed the death sentence. The Appellant is before the Court on original appeal.

¶ 2  Three-year-old Adam Broomhall died as a result of brain damage caused when he was thrown against a table by his mother's boyfriend, Richard Stephen Fairchild, and hit the floor. This occurred in the early morning hours of November 14, 1993. Fairchild was intoxicated at the time, as was Adam's mother, Stacy Broomhall, who was asleep in the bedroom. Fairchild lived with Stacy Broomhall and her three children in Midwest City. The children accepted Fairchild as a father-figure and he assumed the role of disciplinarian.

¶ 3  Nothing unusual happened the day before Adam was killed. Fairchild and Stacy Broomhall drank beer all day long, as they usually did on Saturdays. That evening they visited her mother, Jena Fickland, who lived in north Oklahoma City. The kids watched TV and ate snacks in one room while the adults watched TV and drank beer in another. When they were ready to leave, Fickland insisted they were both too intoxicated to drive and arranged for her seventeen year old daughter, Charity Wade, to drive them home.

¶ 4  Originally Ms. Wade planned to stay overnight and baby sit. These plans changed when Fairchild made sexual advances toward her. She called her mother for advice on what to do, and after putting the kids to bed, she called a cab to take her home. Sometime later, Adam woke up crying and got out of bed. Fairchild "back handed" Adam in the mouth, splitting open his lip, to make him stop crying. Adam didn't stop crying, and Fairchild held him up against a wall heater, front and back. Adam suffered deep, grid-patterned burns on his chest and bottom, but didn't stop crying. Then, Fairchild threw Adam against a drop-leaf dining table, and when Adam hit the

floor, he stopped crying. He also stopped breathing.

¶ 5 Fairchild tried to resuscitate Adam, and when this failed, he woke up Stacy Broomhall, and called 911. Paramedics arrived shortly and took Adam to Children's Hospital in Oklahoma City. He was placed on life support. Hours later he was pronounced brain dead and allowed to die.

## PRETRIAL ISSUES

### A. Filing of the Bill of Particulars After Arraignment

■■ ¶ 6 The State did not originally seek the death penalty in this case. Two weeks before trial the State filed a motion to remand for further preliminary hearing for the stated purpose of alleging prior convictions. The trial court granted the State's motion. The day after the State filed Page Two, and ten days before trial, it filed a Bill of Particulars. Defense counsel requested and was granted a continuance.

¶ 7 Appellant argues in Proposition VIII the Bill of Particulars must be struck, because the State failed to show good cause for filing it after arraignment as required by *Hunter v. State*, 1992 OK CR 19, ¶ 5, 829 P.2d 64, 65. The State did not follow the dictates of *Hunter*, and the trial court erred by allowing this late filing without a showing of good cause. The appropriate remedy here, however, is not the striking of the Bill of Particulars. The *Hunter* decision turned on the Court's concern that the defendant must have sufficient time to prepare for trial. *Id.* By granting the defense an adequate continuance, the trial court cured the error. No further relief is warranted.

### B. Competency to Stand Trial

■ ¶ 8 The trial court granted the defense request for a competency evaluation and held a post-evaluation competency hearing. 22 O.S., 1991, § 1175.4. In Proposition XVI Appellant argues he was held to the unconstitutional standard of proving his lack of competency by clear and convincing evidence. *See Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). Fairchild is correct when he asserts this unconstitutional standard was in place at the time of his hearing, and that it was applied to him.

¶ 9 Evidence at the post-evaluation competency hearing consisted of the parties' stipulation that the examining psychologist would testify Fairchild was competent to stand trial as indicated in the report filed with the court. Forensic psychologist Kelly Shannon, Ph.D. reported to the court that Fairchild was able to explain the allegations against him and that he voiced a "favorable opinion" toward his attorney, he had an "average" courtroom knowledge, and no bizarre perceptions or beliefs toward the legal process were discovered. The psychologist concluded that in spite of a history of head injuries and chemical dependence, Mr. Fairchild was able to work with his attorney in a rational manner in his own defense. The only evidence supporting a finding of lack of competence came from statements by Fairchild's attorney to the effect he did not believe Fairchild could help adequately with his defense. Counsel gave no factual basis for this opinion, and no other evidence was presented. The trial court found Fairchild competent to stand trial.

■ ¶ 10 Because Fairchild was subjected to the improper standard of proof, and some evidence of incompetence was presented at the hearing we will reweigh the evidence using the proper standard of proof. *See Allen v. State*, 1996 OK CR 9, ¶ 47, 923 P.2d 613, 622 (reweighing generally); *Davis v. State*, 1995 OK CR 5, ¶ 14, 888 P.2d 1018, 1022; *Allen v. State*, 1990 OK CR 25, 956 P.2d 918 (opinion on remand). The proper standard of proof is a preponderance of the evidence: that more likely than not, Fairchild lacked competence to stand trial. The opinion of counsel, unsupported by any facts, does not meet this burden. Therefore, applying the correct standard of proof, we find Fairchild did not carry his burden to prove incompetence, and he was competent to stand trial.

## FIRST–STAGE ISSUES

### A. Intent to Harm

■ ¶ 11 Fairchild was charged by Information with First Degree Murder by "wil-

fully (sic) and unlawfully ... injuring or otherwise using unreasonable force upon [the victim] inflicting mortal wounds which caused his death ..." [OR 1]. Early in the trial the question arose whether an intent to injure was an element of the crime charged. The prosecutor argued the specific intent to injure was not an element of the crime as charged, and the trial court agreed. As a result, the trial court denied the defendant's request for an instruction on voluntary intoxication since voluntary intoxication is a defense only to specific intent crimes. *Crawford v. State*, 1992 OK CR 62, ¶ 51, 840 P.2d 627, 638. A determination of the *mens rea* necessary to support a conviction for child-abuse murder committed by the willful use of unreasonable force is an issue of first impression dispositive to this appeal.

¶ 12 Child–Abuse Murder is a special category of felony-murder statutorily defined at 21 O.S.1991, § 701.7(C):

A person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person or who shall willfully cause, procure or permit any of said acts to be done upon the child pursuant to Section 843 of this title.

¶ 13 Section 843, recodified at 10 O.S. Supp.1996, § 7115, sets forth the following acts: willfully or maliciously engaging in child abuse or neglect, willful or malicious injury, torture, maiming, or the use of unreasonable force on a child under the age of eighteen. Plain language, statutory definition, and judicial construction establish an element of specific intent in some, *but not all* of these methods. "Malicious", by definition, means with an intent to harm. *The New Oxford Dictionary*, 2d ed., 1989. So does "torture". *Id.* By statutory definition "maiming" includes a specific intent to injure. 21 O.S.1991, § 751; *Post v. State*, 1986 OK CR 30, ¶ 16, 715 P.2d 1105, 1110. This Court has construed "willful injury" to include a specific intent to harm. *Grady v. State*, 1997 OK CR 67 ¶¶ 4–5, 947 P.2d 1069, 1071; *Bannister v. State*, 1996 OK CR 60, ¶ 3–4, 930 P.2d 1176, 1178–9. Therefore, when the State charges a defendant with 1) maliciously

committing *any* of the enumerated acts, 2) torture, 3) maiming, or 4) injuring a child, a specific intent to injure must be proven beyond a reasonable doubt.

¶ 14 This Court has not had occasion to determine whether the "willful use of unreasonable force" includes the *mens rea* of a specific intent to harm. We do so now.

¶ 15 By statutory definition the term, "willful", "implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another...." 21 O.S.1991, § 92. While this statutory meaning has not been applied in the instance of child-abuse murder by "willful or malicious injuring, torture, maiming or use of unreasonable force," *Bannister*, 1996 OK CR 60, ¶ 3, 930 P.2d at 1178; we find no compelling reason to disregard the statutory definition in the context of "willful use of unreasonable force" alone. Therefore, we hold child-abuse murder caused by the willful use of unreasonable force is a general intent crime which does not require proof of a specific intent to injure.

■ ¶ 16 This does not end our inquiry. The natural consequence of this holding is the need to determine whether a defendant convicted of child-abuse murder *with no proven intent to injure* is death-eligible. The Appellant argues *Tison v. Arizona*, 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) establishes the least culpable mental state sufficient for death eligibility as "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death." *Tison* is a felony-murder case in which the defendant himself did not kill. This Court has found *Tison* does not apply to a defendant who, by his own hand, does kill. *Wisdom v. State*, 1996 OK CR 22, ¶ 38–40, 918 P.2d 384, 395. This holding is consistent with the Supreme Court's Eighth Amendment jurisprudence. The Supreme Court has stated explicitly the Eighth Amendment is not violated by the execution of a person who "in fact killed, attempted to kill, or intended to kill...." *Cabana v. Bullock*, 474 U.S. 376, 386, 106 S.Ct. 689, 697, 88 L.Ed.2d 704 (1986). The Oklahoma felony-murder

scheme is consistent with this holding, for the commission of certain enumerated felonies which, "by their very commission, pose a threat to human life" substitutes for the intent element in a first degree murder prosecution. *Hatch v. State,* 1983 OK CR 47, ¶¶ 30–34, 662 P.2d 1377, 1384, *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). We hold a defendant convicted of child-abuse murder by the willful use of unreasonable force maybe death-eligible.

## B. Evidentiary Issues

■ ¶ 17 In Propositions III, IV, and V the Appellant raises first-stage evidentiary issues. His first argument is that the evidence was insufficient to support a conviction because the uncontroverted proof of his intoxication at the time the crime was committed precludes proof of intent to harm. The question of the defendant's intoxication and its effect on his ability to form a specific intent was withheld from the jury by the trial judge who believed child-abuse murder is a strict-liability crime requiring no culpable mental state.

¶ 18 Voluntary intoxication is a partial defense only to specific intent crimes. *Spunaugle v. State,* 1997 OK CR 47, n. 6, 946 P.2d 246, 257 n. 6. Inasmuch as we hold today intent to harm is not an element of the crime of child abuse murder by means of willful use of unreasonable force, the trial court correctly withheld this issue from the jury. The evidence of voluntary intoxication is not relevant to the question of guilt in this case.

¶ 19 The second evidentiary argument concerns admission of testimony by the State's first-stage witness, Dr. Stuemky, a physician who did not treat the victim, but who testified as an expert witness from the medical record. Appellant argues three portions of Dr. Stuemky's testimony were inadmissible: 1) his conclusion the victim's injuries were caused by child abuse; 2) his cumulative recitation of the victim's injuries, and 3) his statements regarding the fact these injuries had caused pain.

■ ¶ 20 Over strenuous defense objection, the prosecutor asked Dr. Stuemky if child abuse were a medical diagnosis, and what his medical diagnosis was concerning Adam Broomhall. When the defense argued the response would go to the ultimate issue of guilt, the prosecutor countered with the argument that the legal definition and medical diagnosis of child abuse "may be very different." The trial court overruled the objection and Dr. Stuemky testified "[t]he medical diagnosis of this child would be head injuries secondary to child abuse."

¶ 21 This Court set a bright line test for permissible and impermissible expert testimony surrounding the ultimate issue of guilt in *Romano v. State,* 1995 OK CR 74, ¶¶ 20–25, 909 P.2d 92, 109–10, *cert. denied,* —— U.S. ——, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). An expert may suggest the inferences which jurors should draw from the application of specialized knowledge to the facts, but the expert may not "merely tell the jury what result to reach." *Id.* at 109.

¶ 22 When Dr. Stuemky testified his "medical diagnosis" of Adam Broomhall's condition was child abuse, he removed the last inferential step, thus denying the jury its fact finding function. The expert witness in *Romano* also crossed this line, and this Court held the personal expression of guilt violates the Oklahoma Evidence Code and case law because it: (1) does not assist the jury as required by 12 O.S.1991, § 2701, (2) its probative value is substantially outweighed by the danger of unfair prejudice because it carries the "substantial weight and credibility" of an expert opinion, 12 O.S.1991, § 2403; and, (3) the Court has long held an expert is not to express a personal opinion of guilt. *Id.* at 110.

■ ¶ 23 We are not persuaded by the suggested semantic distinction that a medical diagnosis and legal conclusion "may well" be different. To accept this argument would be to gut the well-established rules of evidence of their meaning. Dr. Stuemky's testimony that Fairchild committed child-abuse is error. This error is subject to harmless error analysis. It was found to be harmless in *Romano.* An error is harmless if the Court determined beyond a reasonable doubt it had no effect on the outcome of trial. *Id.*

¶ 24 The evidence that Fairchild hit three-year-old Adam Broomhall in the lip, burned his chest and bottom on the wall heater, and threw him against a drop leaf table was uncontroverted. Thus, overwhelming evidence of unreasonable force supported the jury's verdict. In this context, Dr. Stuemky's testimony could have had no prejudicial effect on the jury, and the error of admitting his diagnosis is harmless beyond a reasonable doubt.

¶ 25 Fairchild also argues Dr. Stuemky's testimony was inadmissible, for it was cumulative in some respects of the testimony of the treating physicians and the paramedics who responded to the 911 call. We find, however, the allegedly cumulative testimony was admitted in the context of testimony regarding the amount of force required to cause these injuries, and the testimony regarding force was not cumulative. Therefore, we find no error in the admission of this testimony.

¶ 26 At trial the defense objected to testimony by Dr. Stuemky regarding the pain Adam would have experienced as a result of his injuries, arguing pain was not a first-stage issue. Appellant now urges this argument on appeal. We disagree. Pain, and the deceased's reaction to it could be relevant to the jury's determination whether the defendant used unreasonable force against this child. We find no error in the admission of this relevant evidence. 12 O.S. 1991, § 2402.

¶ 27 Proposition V addresses the admission of State's Exhibit 83, a 9 × 12 inch glossy color photo of the surgically removed skull cap of Adam Broomhall set on a blue surgical cloth. The brain is visible inside the skull. One half of the brain is bluish-gray, the other half is covered by clotted, dark red blood. The exhibit was admitted over defense objection during the medical examiner's testimony. Appellant argues the admission of this gruesome photograph warrants reversal.

¶ 28 Post-autopsy photographs generally are found to be inadmissible, for any probative value they have is substantially outweighed by prejudicial effect. 12 O.S.1991,

§ 2403. Their relevance is negligible for they show the handiwork of someone other than the defendant, and their prejudicial value is great for they shock the general public unaccustomed to viewing the inside of the human body. *Sattayarak v. State*, 1994 OK CR 64, ¶ 8, 887 P.2d 1326, 1330; *Ritchie v. State*, 1981 OK CR 91, ¶¶ 4–7, 632 P.2d 1244, 1245; *Oxendine v. State*, 1958 OK CR 104, ¶¶ 6–8, 335 P.2d 940, 943. State's Exhibit 83 is no exception. While this Court will not disturb a trial court's decision to admit evidence absent an abuse of discretion, *Spencer v. State*, 1990 OK CR 49, ¶ 8, 795 P.2d 1075, 1078, an abuse of discretion will be found where the probative value of a photograph is substantially outweighed by the danger of unfair prejudice. *Willingham v. State*, 1997 OK CR 62, ¶ 37, 947 P.2d 1074, 1083. Here the probative value is outweighed by the danger of unfair prejudice, and the trial court erred by admitting the photograph.

¶ 29 Error in the admission of a photograph does not always require reversal. *Id.* To determine the prejudice incurred by the erroneous admission, we look to the nature of the other photographic evidence admitted at trial. In this case, photographs of the bruises and branding suffered by the victim were properly admitted. These photographs were far more prejudicial than the sterile, clinical photograph of the victim's brain. And while the photograph of the brain was more prejudicial than probative, given the other, properly admitted photographs, we do not find it improperly incited the passions of the jury. This error is harmless.

## C. Jury Instructions

¶ 30 Proposition I challenges the instruction given by the trial court on the meaning of "willful" in the context of "willful use of unreasonable force." "Willful" was defined as "purposeful" not requiring "any intent . . . to injure another. . . ." This instruction was found to require reversal in *Bannister.*

¶ 31 The *Bannister* holding was grounded on the fact intent to injure was an element of the crime charged, and thus this instruction was confusing. Inasmuch as we hold

today intent to harm is not an element of child-abuse murder by willful use of unreasonable force, this instruction is correct.

¶ 32 Appellant also argues the trial court committed reversible error by denying his requested instruction on second-degree murder due to voluntary intoxication. Voluntary intoxication may be a valid defense to those crimes which include an element of specific intent. *Jackson v. State*, 1998 OK CR 39, ¶ 67, 964 P.2d 875, ¶ 67, 69 OBJ 2421, ¶ 67. Child-abuse murder by means of the willful use of unreasonable force does not include an element of specific intent, thus voluntary intoxication is not a defense to it. *See Spunaugle v. State*, 1997 OK CR 47, n. 6, 946 P.2d 246, 257 n. 6.

¶ 33 Appellant also argues the trial court should have instructed the jury *sua sponte* on manslaughter in the first degree when perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner. See 21 O.S.1991, § 711(2). The elements of heat of passion are 1) adequate provocation; 2) passion or emotion such as anger, rage, fear or terror; 3) the homicide occurred during the state of passion; 4) a causal connection exists between the provocation, passion and homicide. *Hogan v. State*, 1994 OK CR 41, ¶ 43, 877 P.2d 1157, 1165. The Appellant argues the "adequate provocation" in this case "could have been" the crying baby. This argument was not made at trial, and the evidence *as it was presented* did not construct this defense. The trial court therefore correctly did not so instruct the jury. *Hooker v. State*, 1994 OK CR 75, ¶ 32, 887 P.2d 1351, 1361, *cert. denied*, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995); *Ellis v. State*, 1992 OK CR 45, ¶ 15, 867 P.2d 1289, 1297, *cert. denied*, 513 U.S. 863, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994); *Duvall v. State*, 1991 OK CR 64, ¶¶ 9–10, 825 P.2d 621, 627, *cert. denied*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Fowler v. State*, 1989 OK CR 52, ¶¶ 28–29, 779 P.2d 580, 585, *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990).

## SECOND–STAGE ISSUES

### A. Evidence

¶ 34 The State introduced eighteen post-mortem photographs in the punishment stage of trial documenting the injuries suffered by the child victim. Appellant argues in Proposition V these are cumulative and unduly prejudicial.

¶ 35 Needlessly cumulative evidence may be excluded by the trial court, 12 O.S.1991, § 2403, and there is a point at which needless repetition can inflame the jury and result in error. *Livingston v. State*, 1995 OK CR 68, ¶¶ 20–21, 907 P.2d 1088, 1094. We agree nine of these photographs are redundant and should not have been admitted. We are not persuaded, however, this repetition caused prejudice warranting reversal.

¶ 36 In Proposition IX the Appellant challenges the use of the same evidence to prove guilt and the aggravating circumstance the murder was heinous, atrocious, or cruel. He argues such use is a form of double jeopardy barred by the state and federal constitutions, as well as double prosecution barred by 21 O.S.1991, § 11(A).

¶ 37 We disagree with the basic premise of this argument, and therefore are not persuaded. Double jeopardy concerns are not triggered by the use of the same evidence to prove guilt and impose punishment, for the finding of guilt is merely a necessary condition for imposing a single punishment. *See Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S.Ct. 546, 553, 98 L.Ed.2d 568 (1988). For the same reason, § 11 is not implicated either.

¶ 38 Appellant argues in Proposition XI the evidence is insufficient to prove the murder was heinous, atrocious or cruel because "the injuries inflicted upon the child worked together to contribute to his death." In order to support a finding that a murder is heinous, atrocious, or cruel, the evidence must be sufficient to show the murder was preceded by torture or serious physical abuse. *Stouffer v. State*, 1987 OK CR 166, ¶ 6, 742 P.2d 562, 563, *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). These acts of torture or serious physical abuse must constitute gratuitous violence not an integral part of the murder itself. *Hawkins v. State*, 1994 OK CR 83, ¶ 42, 891 P.2d

586, 596–97. The evidence in this case proves the deceased suffered numerous non-fatal injuries prior to his death. The evidence is uncontroverted the Appellant hit the victim repeatedly prior to death, and burned him severely front and back on the wall heater prior to inflicting the killing blow. This gratuitous violence satisfies the definition of serious physical abuse.

### B. Jury Instruction

¶ 39 When the trial court instructed the jury on its duty to determine whether the "heinous, atrocious or cruel" aggravating circumstance existed, it gave the following erroneous instruction:

> You are instructed that, in arriving at your determination of punishment, you must first determine whether at the time this crime was committed. The following aggravating circumstance existed beyond a reasonable doubt:
>
> 1. The murder was especially heinous, atrocious or cruel.

The first sentence is so flawed grammatically that it carries no meaning. The Appellant argues the punctuation error caused the trial court to advise the jury the aggravating circumstance in fact existed beyond a reasonable doubt, rather than directing the jury to decide the question. No contemporaneous objection was lodged, so we examine this question for plain error. *Perry v. State,* 1995 OK CR 20, ¶ 42, 893 P.2d 521, 531.

¶ 40 We agree this instruction was in error. Such an error may be found harmless if the instructions as a whole properly instruct the jury. *Ashinsky v. State,* 1989 OK CR 59, ¶ 12, 780 P.2d 201, 205. When we read the instructions as a whole, we find Instructions Nos. 6, 10, and 11 all instructed the jury it must decide whether the aggravating circumstance existed beyond a reasonable doubt, and that its decision must be unanimous. Because the instructions as a whole properly instruct the jury, we find this error to be harmless.

¶ 41 In the Fourteenth Proposition the Appellant raises five challenges to the second-stage jury instructions. First, he argues the trial court did not inform the jury the finding of mitigating circumstances did not have to be unanimous. Appellant acknowledges this issue has been decided against him in *Harjo v. State,* 1994 OK CR 47, ¶ 76, 882 P.2d 1067, 1081, *cert. denied,* 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995). We find no reason at present to revisit the issue.

¶ 42 The second challenge addresses the instructions on the use of mitigating evidence. The standard instruction on mitigating evidence directed the jury that mitigating circumstances are those which "in fairness and mercy, may be considered extenuating or reducing the degree of moral culpability or blame." This instruction is a correct statement of law. *Mayes v. State,* 1994 OK CR 44, ¶ 148, 887 P.2d 1288, 1319–20. There is no error here.

¶ 43 The defense requested an instruction directing the jury that it could decline to impose the death penalty even if it unanimously found an aggravating circumstance. The Appellant argues that the trial court erred by failing to so instruct the jury. We have rejected this argument and find no reason to revisit it. *Valdez v. State,* 1995 OK CR 18, ¶¶ 78–80, 900 P.2d 363, 385, *cert. denied,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995); *Bryson v. State,* 1994 OK CR 32, ¶ 61, 876 P.2d 240, 262–63, *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

¶ 44 Appellant next argues the trial court misinstructed the jury on the process of weighing the aggravating and mitigating evidence. The balancing test set forth by the instructions is a correct statement of law. *Scott v. State,* 1995 OK CR 14, ¶ 43, 891 P.2d 1283, 1297, *cert. denied,* 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 735 (1996).

¶ 45 The defense requested, and the trial court declined an instruction on the meaning of a life sentence and a sentence of life without possibility of parole. During deliberations the jury sent out a note asking whether the defendant would ever be released from prison if he was sentenced to life without the possibility of parole. The trial court responded by telling the jury it had all the evidence it needed to decide the case.

This is a proper response, for the trial court has no duty to explain the Oklahoma parole process to the jury. *Johnson v. State*, 1996 OK CR 36, ¶¶ 51–52, 928 P.2d 309, 320, *cert. denied,* —— U.S. ——, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997); *McGregor v. State*, 1994 OK CR 71, ¶ 36, 885 P.2d 1366, 1383, *cert. denied,* 516 U.S. 827, 117 S.Ct. 2489, 138 L.Ed.2d 996 (1995).

¶ 46 In the Twelfth Proposition the Appellant argues the heinous, atrocious or cruel aggravating circumstance is unconstitutionally vague. This argument is rejected consistently by the Court, and we find no reason to revisit it here. *Le v. State*, 1997 OK CR 55, ¶ 41–43, 947 P.2d 535, 552; *Hamilton v. State*, 1997 OK CR 14, ¶ 46, 937 P.2d 1001, 1012, *cert. denied,* —— U.S. ——, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998); *Smith v. State*, 1996 OK CR 50, ¶ 46, 932 P.2d 521, 536.

¶ 47 In the Seventeenth Proposition the Appellant argues the death sentence was influenced by passion and prejudice. We do not find any prejudice or undue passion created by the issues raised by the Appellant.

**TRANSCRIPT ERRORS**

██ ¶ 48 The transcript in this case contains numerous errors, and several bench conferences are not transcribed. The Appellant argues in the Sixth Proposition these deprive him of the right to a meaningful appeal, because he cannot present his claims fully. The Appellant presents nothing beyond mere rank speculation to support this argument factually. Absent some showing of harm, we find no relief is warranted. *Woodruff v. State*, 1993 OK CR 7, ¶ 13, 846 P.2d 1124, 1132, *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

**REPORT BY THE TRIAL JUDGE**

██ ¶ 49 Judge Major Wilson died shortly after trial and did not file a trial report in this case. The trial report is mandated by statute as well as court rule. 21 O.S.1991, § 701.13; Rule 9.2(D), *Rules of the Oklahoma Court of Criminal Appeals,* 22 O.S. Supp.1996, Ch. 18 App. Upon notice from the District Court Clerk the report had not been filed, this Court ordered an eviden-

tiary hearing be held to determine whether the report, or notes to support the report had been prepared by the then deceased judge. District Judge Dan Owens filed an order concluding no trial notes existed and no report had been prepared. Appellant argues in the Seventh Proposition the missing report denies him meaningful appellate review.

¶ 50 In support of this argument the Appellant cites two instances in which this Court used information from the trial report to modify a sentence. The Appellant points us to nothing in the record to support the argument the trial report might have contained statements helpful to him. Where the trial report cannot be filed, and the Appellant can show nothing beyond pure speculation to suggest it might have been helpful to him, we find no relief is warranted.

**CONSTITUTIONALITY OF THE
CHILD–ABUSE MURDER
STATUTES**

¶ 51 In his Fifteenth Proposition the Appellant argues the child-abuse murder statute is unconstitutionally vague. He asks the Court to reconsider its holding in *Drew v. State*, 1989 OK CR 1, ¶ 12, 771 P.2d 224, 228 in which the term "unreasonable force" in 21 O.S. Supp.1982, § 701(C), the child-abuse statute, was found not to be unconstitutionally vague. We find no reason to disturb this ruling. As we held in *Drew*, the language of the statute is "sufficiently clear and explicit that all persons of ordinary intelligence could understand its provisions." *Id.*

██ ¶ 52 In the Thirteenth Proposition the Appellant argues the possibility of the death penalty for child-abuse murder which requires only an intent to injure and not to kill, violates the Eighth and Fourteenth Amendments of the federal constitution and Article 2, §§ 7, 9 and 19 of the Oklahoma Constitution. Appellant grounds his federal constitutional argument in *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3377, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 149–50, 107 S.Ct. 1676, 1684, 95 L.Ed.2d 127 (1987). As we explained above, *Enmund* and *Tison* do not apply to a case in

which the defendant himself kills. The state constitution does not impose a higher standard than the federal constitution in regards to death eligibility.

### ACCUMULATION OF ERRORS

¶ 53 In the Eighteenth Proposition the Appellant argues the accumulation of errors requires reversal. We disagree. Trial errors include the admission of cumulative photographs of the victim after death, admission of an autopsy photograph of the victim's brain and the erroneous instruction which appears to instruct the jury the murder was heinous, atrocious and cruel. Given the uncontroverted and overwhelming evidence of guilt in this case, these errors, even in aggregate, do not warrant relief.

### MANDATORY SENTENCE REVIEW

¶ 54 In every capital murder case this Court conducts a final analysis to determine whether the evidence supports the jury's finding of aggravating factors, and whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. 21 O.S.1991, § 701.13(C). We now conduct this mandatory sentence review.

¶ 55 The jury found one aggravating circumstance, that the murder was especially heinous, atrocious, or cruel. 21 O.S.1991, § 701.12(4). In order for the jury to find the aggravator, the State must prove beyond a reasonable doubt the murder was preceded by torture or serious physical abuse of the victim. *Smallwood v. State*, 1995 OK CR 60, ¶ 66, 907 P.2d 217, 234, *cert. denied,* — U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996); *Revilla v. State*, 1994 OK CR 24, ¶ 43, 877 P.2d 1143, 1155, *cert. denied*, 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Stouffer v. State*, 1987 OK CR 166, ¶ 3, 742 P.2d 562, 563, *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). A slow, painful death satisfies this condition precedent. *See McCracken v. State*, 1994 OK CR 68, ¶ 38, 887 P.2d 323, 332, *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995); *Romano v. State*, 1993 OK CR 8, ¶¶ 76–80, 847 P.2d 368, 386–87, *cert. granted in part* 510 U.S. 943, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993); *Woodruff v. State*, 1993 OK CR 8, ¶¶ 102–105, 846 P.2d 1124, 1147, *cert. denied*, 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Duvall*, 1991 OK CR 64, ¶ 38–39, 825 P.2d at 634.

¶ 56 Uncontroverted evidence established Fairchild split open the victim's upper lip by "backhanding" him in the mouth, and then burned him on the chest and bottom by holding him up to a wall heater prior to delivering the killing blow of throwing him against a drop leaf table. Uncontroverted evidence also established the victim was in pain during the hitting and burning, for he continued to cry until he hit the floor after being thrown against the table. These acts provide sufficient evidence to prove beyond a reasonable doubt the murder in this case was preceded by serious physical abuse.

¶ 57 The Court must also determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. We examined the impact of trial error in this opinion. Trial error includes testimony by the State's expert witness that his medical diagnosis of the cause of death was "child abuse"; admission of a photograph of the victim's brain; admission of cumulative postmortem photographs of the victim; and one of the four instructions on the "heinous, atrocious, or cruel" aggravating circumstance was so seriously flawed grammatically that it was meaningless. Given the overwhelming and uncontroverted evidence of guilt, we found the first three errors harmless. Given the fact three of the instructions regarding the "heinous, atrocious, or cruel" aggravator clearly and correctly instructed the jury on the proper procedure for determining the issue, we found the fourth error harmless. When we examine these errors individually, and in aggregate, we find they do not infect the trial with passion, prejudice or other arbitrary factor.

¶ 58 Finding no error warranting reversal or modification, Judgment and Sentence of the District Court of Oklahoma County is **AFFIRMED.**

CHAPEL, P.J., LUMPKIN, JOHNSON, JJ. concur in results.

STRUBHAR, V.P.J. and LANE, J., dissent.

LUMPKIN, Judge, concurring in results.

¶ 1 I concur in the decision to affirm the judgment and sentence in this casebut write separately to address the following issues.

¶ 2 The finding that child abuse murder caused by the use of unreasonable force is a general intent crime is supported by our previous cases of *Wisdom v. State,* 918 P.2d 384 (Okl.Cr.1996) and *Tarver v. State,* 651 P.2d 1332 (Okl.Cr.1982). Further, our decision in *Hockersmith v. State,* 926 P.2d 793 (Okl.Cr.1996) should be modified to be consistent with the decision in this case.

¶ 3 Regarding the photograph of the victim's brain, the photo was not that of an autopsy incision, *i.e.,* damage caused by a doctor after the victim's death. It merely revealed for observation the damage caused by Appellant to the victim. If the injury caused by Appellant would have been visible on the outside of the victim's body, a photo of such would have been admissible, *i.e.,* burns from the wall heater. Therefore, why is a photo of an internal injury caused by Appellant not admissible? The photo in this case only showed the damage to the brain for comparison and proof of the extent of the force used against the victim. Is such a photo any more prejudicial than a photo of the burns on the victim's body? I think not. The opinion says the photos of the burns were more prejudicial than the photo of the brain but the burn photos were admissible. It makes no sense to admit the prejudicial photos of the burns and not the sterile photo of the victim's damaged brain.

¶ 4 Turning to the jury instruction on the aggravator of "especially heinous, atrocious or cruel", I find any error merely a scrivener's error in punctuation. When the instruction is read in its entirety and in context of the other instructions, it is clear the period in the first sentence should have been a comma, thus setting forth a correct statement of the law.

¶ 5 Finally, the purpose of the trial judge's report is for this Court's mandatory sentence review in capital cases. A review of the record in this case, including the evidence presented in mitigation, supports a finding that the sentence imposed in this case was not the result of passion, prejudice or any other arbitrary factor. 21 O.S.1991, § 701.13(C).

LANE, Judge, dissenting.

¶ 1 I dissent. The specific intent to injure is an element of child-abuse murder which must be proven beyond a reasonable doubt. *Grady v. State,* 1997 OK CR 67, ¶ 3, 947 P.2d 1069, 1070; *Bannister v. State,* 1996 OK CR 60, ¶ 3, 930 P.2d 1176, 1178; *Hockersmith v. State,* 1996 OK CR 51, ¶ 10, 926 P.2d 793, 795; *Price v. State,* 1989 OK CR 74, ¶ 15, 782 P.2d 143, 147; *Drew v. State,* 1989 OK CR 1, ¶ 13, 771 P.2d 224, 228. Our recent cases have determined what instructions are necessary and sufficient to guide the jury in deciding whether this element has been proven.

¶ 2 The Court abandons the *mens rea* requirement entirely today. Today, a defendant in Oklahoma with no proven intent to harm not only can be convicted of child-abuse murder, he can be put to death. This liberalization of Oklahoma death-penalty jurisprudence is not supported by our case law, and is, in my opinion, wrong. The majority holding eliminates voluntary intoxication as a defense to child-abuse murder by the use of unreasonable force. From a practical standpoint this ruling permits the death sentence to be imposed on a person who may have been too intoxicated to know what he was doing. Under such circumstances the death penalty is not an effective deterrent or punishment.

¶ 3 Furthermore, the unauthorized remand for further preliminary hearing appears to be nothing more than a pretense to open the door for the filing of a Bill of Particulars. The trial court erred by allowing this abuse of procedure. Had this error not occurred, the question of death eligibility would not be before us. I am authorized to

state that Judge Strubhar joins in this dissent.