**Thomas HUNTER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–410.**

Court of Criminal Appeals of Oklahoma.

March 27, 1992.

Patti Palmer Chief Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Thomas Hunter, appellant, was tried by jury for the crime of Murder in the First Degree in violation of 21 O.S.1981, § 701.7, in Case No. CRF–87–1453–M in the District Court of Cleveland County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at death, finding the existence of two aggravating circumstances: (1) that the appellant had been previously convicted of a felony involving the use or threat of violence; and (2) that a probability existed that the appellant would constitute a continuing threat to society. The trial court sentenced appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant appeals.

This case must be REVERSED and REMANDED for a new trial, so only a brief recitation of the facts will be necessary.

### I.

On October 29, 1987, the appellant was charged with malice aforethought murder. The Bill of Particulars was not filed until March 9, 1988, with trial set for March 16, 1988. The appointed defense counsel moved to quash the Bill due to the delay in filing which resulted in defense counsel being "lulled into expectation no death case would be involved."

Appellant was accused of the murder of his fiancee, Mary Carter, on October 26, 1987. There is no dispute that Mary Carter died as a result of a single gun shot to her head by appellant. Testimony at trial indicates that the fiancee died either instantaneously or within minutes. On the night of this death, the couple had been drinking and various witnesses testified that the couple was happy and talking of going to Dallas and getting married. Others testified that all was not perfect in paradise and, in fact, Mary Carter, the night before had sex and spent the night with a friend of the appellant. The death occurred when the couple left Norman for Dallas on the night of the 26th and with Mary Carter driving the van. The appellant stated that he got the gun out of the glove compartment and while he moved it to the back end, it accidentally discharged and Mary's death occurred.

Initially, we are very disturbed by the fact that the prosecution in the present case did not file the Bill of Particulars seeking the death penalty until seven days prior to trial. At present, there is no set time prior to trial within which the State must file a Bill of Particulars. 21 O.S. 1989, § 701.10. However, both parties agree that the notice need only be given within a reasonable time prior to trial. We find that giving notice that the State intends to seek the death penalty seven days prior to trial is clearly unreasonable. By comparison, the State is required to give ten days notice of its intention to use evidence of other crimes. *See Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). It is our opinion the State knows or should know no later than the preliminary hearing whether or not they intend to seek the death penalty in a particular case. We find the notice in the present case simply inadequate. The defendant has the right to a fair trial; how can one properly prepare for a death case trial in one week. This Court adopts the standard that the State *must* file the Bill of Particulars prior to or at the arraignment of the defendant. The trial court may for good cause shown, extend this time but should use its sound discretion in so doing.

### II.

On February 16, 1988, appellant filed a motion for production, requesting the State to produce all technical reports, including ballistics reports. The motion was granted by the trial court on February 29, 1988. The ballistics report provided to the defense was prepared by Frank Carr, a firearm examiner with the Oklahoma City police department. When asked by defense counsel at the preliminary hearing whether one could conclude that only one shot had been fired, Officer Carr responded, "Yes." (PH Tr. 94–95)

Prior to trial, Officer Carr left the police department and the State had Officer Roy Golightly reexamine the physical evidence,

so that he might be able to testify at trial. During a phone conversation on the *first day* of trial, Officer Golightly informed the district attorney's office that he had observed a primer dent on one of the four live rounds remaining in the gun. A primer dent on a bullet indicates that when the trigger had been pulled, the bullet did not discharge, leaving only a dent on the end of the bullet.

During an in-camera hearing on the morning of the second day of trial, in a motion to offer the newly discovered evidence, the prosecutor argued that he had never been informed of the indentation by Officer Carr and that he was unaware of such evidence until Officer Golightly discovered it. The prosecutor argued that the relevance of the bullet's indentation depended on the location of that bullet within the gun's chamber. The prosecutor stated that just that morning he had contacted Detective Ed Johnson, the investigator who had secured the gun. The prosecutor claimed that Detective Johnson had fortunately made notes of the location of the rounds in the chamber, and that after conferring with Detective Johnson and Officer Golightly, the live round with the dented primer was found in the chamber in front of the round which was under the hammer, i.e., the fired round. In other words, the prosecutor stated that he would argue that appellant had been required to pull the trigger twice because the first round failed to discharge. The prosecutor's argument was later referred to as the "click-bang" theory. The prosecutor stated that he would be presenting the evidence later that morning or early in the afternoon.

Defense counsel objected strenuously, claiming that the ballistics report they had received from Officer Carr did not contain any type of disclosure relative to any type of indented bullet in the gun's chamber, nor was he given any evidence as to the location of the bullets in the chamber. Defense counsel further argued that he was not informed of any diagramming of the rounds performed by Detective Johnson, nor did Detective Johnson testify as to any type of diagram during the preliminary hearing. Defense counsel concluded that the evidence was discoverable prior to the preliminary hearing, and thus, did not qualify as newly discovered evidence and finally, its introduction would be in violation of the trial court's production order. The trial court overruled appellant's objection and allowed the State to present the evidence to the jury.

During various arguments to the jury, the prosecutor made several statements concerning his "click-bang" theory:

All it means is that in the instant that it took to pull that trigger once, let alone twice, the Defendant formed the thought to pull that trigger deliberately with the intention to send the bullet into the back of [M.C.'s] brain, and thereby take her life. (Tr. III 9)

[W]hen you are viewing the circumstantial evidence on that issue, all of the evidence that the State presents must be consistent with its theory that when he pulled the trigger that second time, he intended to kill [M.C.]. (Tr. III 16)

It doesn't matter where that gun came from. What matters is, why he pulled the trigger twice. (Tr. III 21)

[H]e put that gun to her head and he pulled the trigger and, thud; and so he pulled the trigger again, and in that brief instant, [M.C.] had turned to the left because that's where the door was. (Tr. III 22)

You will also have an opportunity ... to examine the three remaining live rounds. I ask you to look at them because one of them is worth a thousand stories. (Tr. III 27)

On May 9, 1988, the appellant argued his Motion For a New Trial. Appellant presented Raymond Cooper, an expert firearm examiner from Dallas, Texas. Mr. Cooper testified that he had had an opportunity to examine the revolver and bullets that were examined by Detective Golightly. Mr. Cooper testified that he found the revolver in normal working order. Mr. Cooper further testified that there was no way to determine whether or not the indentation had been made by the gun involved, a fact which had been argued at trial. Most importantly, however, Mr. Cooper testified that, in conjunction with Detective Golight-

ly, the bullet with the indentation was examined and it was determined that the bullet was, in fact, a live round and not defective. The experts concluded that if the indented bullet had received a full force strike from the hammer of the gun, it would have detonated. The State presented no evidence contesting this point.

During his argument to the trial court, defense counsel claimed that as a result of the court's ruling during trial, the State had been able to argue it's theory of "click-bang" in support of the element of premeditation. Defense counsel claimed that the evidence took away his defense that M.C.'s death was the result of an accidental firing of the gun. Defense counsel concluded that it was now clear that the bullet was a live round, which made the indentation totally irrelevant and supported his defense that the gun had accidentally discharged one time. His defense of accident was taken from him at trial without prior notice, thereby depriving the defendant of a fair trial in violation of his constitutional rights.

The prosecutor responded that he did not think the State had violated the court's discovery order and that the evidence was not ballistics in nature. Nevertheless, the prosecutor admitted that the evidence had changed his tactics and closing argument to a great degree, in that he had been able to argue that appellant had pulled the trigger twice. The prosecutor agreed that with the discovery that the bullet was a live round, he probably would have not made the "click-bang" argument.

The trial court overruled appellant's motion for a new trial, finding that his evidence was not newly discovered.

■ The test for whether a motion for a new trial should be granted based upon newly discovered evidence is: (1) the evidence must be material; (2) the evidence could not have been discovered before trial with due diligence; (3) the evidence cannot be cumulative; and (4) the evidence must create a reasonable probability that, had the newly discovered evidence been introduced at the original trial, it would have changed the outcome. *Salyers v. State*, 755 P.2d 97, 101 (Okl.Cr.1988).

In *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 354 (1976), the United States Supreme Court stated that the proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. *Agurs*, 427 U.S. at 113, 96 S.Ct. at 2402.

■ We find the evidence that the bullet was not defective and would have fired to be very material. The evidence clearly eliminated the State's "click-bang" theory for support of premeditation. Based on our concern for the justice of the finding of guilty, and after a review of the entire record, we find that such evidence creates in our mind a reasonable doubt of appellant's guilt of First Degree Murder. The evidence of the dent and location of the bullets was known by the police and, therefore, known or should have been known by the State.

We also cannot find that the evidence could have been discovered before trial with due diligence. This finding is supported by the fact that the State did not even discover the "indentation" until the first day of trial. Furthermore, without the benefit of Officer Johnson's diagram, an indentation on a bullet would have been meaningless to any defense expert. The evidence is clearly not cumulative, and finally, we have already found that the evidence creates a reasonable probability that, had the newly discovered evidence been introduced at the original trial, it would have changed the outcome.

Since there is a reasonable probability that a different result would have been reached had the newly discovered evidence been introduced at trial, it was an abuse of discretion not to grant appellant's motion for a new trial.

**68**

### III.

■ Finally, we find error in the trial court's failure to give appellant's written requested instruction on the lesser included offense of misdemeanor/manslaughter. Appellant claimed that the gun had accidentally discharged as he was moving it from the glove compartment of the van to the back seat. If believed by the trier of fact, such conduct could have violated various misdemeanor statutes. *See* 21 O.S. 1981, §§ 1279, 1289.11, 1289.13.

In *Dawson v. State,* 647 P.2d 447, 449 (Okl.Cr.1982), this Court stated,

> In a prosecution for murder, the court should instruct the jury on the law of each degree of homicide which the evidence tends to prove whether it be requested on the part of the defendant or not; and it is the duty of the court to decide, as a matter of law, whether there is any evidence that would tend to reduce the degree of the offense to manslaughter in the first degree.

> In determining whether there is any evidence tending to reduce the degree of the homicide from murder to manslaughter, the trial court should give the defendant the benefit of any doubt which the evidence may suggest, and instruct the jury on the law of each degree which the evidence tends to prove, whether requested or not.

Title 21 O.S.1981, § 711(1) provides that a homicide is manslaughter in the first degree "[w]hen perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." As we stated in *Dawson,* that the appellant interposed the defense of accident would not preclude an instruction on misdemeanor/manslaughter, for a defendant can be guilty of accidental homicide during the commission of a misdemeanor and thereby be accountable for manslaughter in the first degree. *Id.* In the present case, we find that the appellant was entitled to an instruction on his theory of defense.

For the foregoing reasons, this case is therefore REVERSED and REMANDED for a new trial.

LUMPKIN, V.P.J., and BRETT, J., concur.

LANE, P.J., specially concurs.

PARKS, J., concurs in part/dissenting in part.

LANE, Presiding Judge, specially concurring:

I agree that the failure to file a Bill of Particulars until seven days prior to trial is unreasonable and error, but I disagree with the requirement that the Bill of Particulars must be filed at or prior to arraignment as imposed by the majority. The amount of time required for counsel to prepare to defend against the death penalty in the second stage varies from case to case. I can conceive of cases where the State may have cause not to request the death penalty at the inception of the case or even prior to arraignment and then discover new evidence that might justify the imposition of the death penalty.

I would rather hold that defendant in a capital murder case shall be allowed a reasonable amount of time to prepare for trial after the Bill of Particulars is filed. If defendant's counsel believes he does not have sufficient time to prepare to defend against the death penalty he should request a continuance and if the court agrees a reasonable continuance should be granted. What is a reasonable time should be a matter in the sound discretion of the trial judge, reviewable for abuse of discretion on appeal.

PARKS, Judge, concurring in part/dissenting in part:

I concur in all respects with the majority opinion except that part which seeks to set a specific time limit on when the State must file its Bill of Particulars. The majority holds that the State "must" file the Bill of Particulars prior to or at formal arraignment, but then states that such filing may be extended by the trial court for good cause shown. Title 22 O.S.1981, § 470, provides that arraignment shall be held within thirty (30) days after the defendant is

bound over for trial, but that the trial court may extend such date for good cause. Considering the majority's holding and Section 470 together, it is apparent both that the trial court is vested with broad discretion in setting an arraignment date and that the deadline for filing a Bill of Particulars will vary from case to case. I do not *per se* disagree with this scenario. However, rather than attempt to place an absolute time limit on the filing of a Bill of Particulars, it is my opinion that this Court should review each case individually to determine whether the Bill of Particulars was filed within a reasonable time prior to trial.

Given the wide latitude of trial courts in extending the arraignment date and the date for filing a Bill of Particulars under either the existing statutes or the majority's holding, I believe the "reasonable time" standard more accurately describes the test this Court should, and in all likelihood will, employ when reviewing this type of issue. Were we to strictly implement the majority's standard, this Court would be forced to sanction the filing of a Bill of Particulars in a case where arraignment was set only seven (7) days prior to trial. Clearly, such is not the intent of the majority.

Applying the "reasonable time" standard to the facts of this case, I agree that the filing of the Bill of Particulars only seven (7) days prior to trial was unreasonable.