2004 OK CR 32

**Stephen Ray THACKER, Appellant**

v.

**The STATE of Oklahoma, Appellee.**

**No. D–2003–21.**

Court of Criminal Appeals of Oklahoma.

Oct. 21, 2004.

As Corrected Oct. 27, 2004.

Silas Lyman, Gretchen Garner Mosley, Lynn Burch, Okla. Indigent Defense System, Capital Trial Division, Tulsa, OK, for Appellant at trial.

Gene Haynes, District Attorney, Charles A. Ramsey, Assistant District Attorney, Prior, OK, for the State at trial.

Gretchen Garner Mosley, Okla. Indigent Defense System, Capital Trial Division, Tulsa, OK, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Preston Saul Draper, Assistant Attorney General, Oklahoma City, OK, for the State on appeal.

## OPINION

LUMPKIN, Judge:

¶1 Appellant, Stephen Ray Thacker, waived his right to a jury trial and appellate review of his convictions, pled guilty before the District Court of Mayes County, Case Number CF–99–305, and was thereafter convicted of First Degree Murder (Count I), in violation of 21 O.S.Supp.1996, § 701.7(A), Kidnapping (Count II), in violation of 21 O.S.1991, § 741, and First Degree Rape (Count III), in violation of 21 O.S.1991, § 1114(A)(3). Appellant also waived a jury trial on the aggravating circumstances alleged by the State; thus, a non-jury trial was held on the three aggravating circumstances alleged: (1) the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; (2) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) the murder was especially heinous, atrocious, or cruel. The trial judge found the existence of all three aggravating circumstances beyond a reasonable doubt and found the aggravating circumstances outweighed the mitigating evidence presented by the defense. Appellant was sentenced to death on the murder charge. He was also sentenced to ten (10) years imprisonment on Count II and fifty (50) years imprisonment on Count III, along with certain fines on both counts, and the trial judge ordered all sentences to be served consecutively.

¶2 Appellant now appeals his convictions and sentences.[1] He has previously been convicted on a subsequent homicide in Tennessee and received a death sentence. Conse-quently, he has been returned to Tennessee to await conclusion on the appeals in that case and execution.

¶3 On December 23, 1999, Appellant murdered Laci Dawn Hill. Appellant had responded to an advertisement Ms. Hill made regarding a pool table she had for sale. After calling Ms. Hill and being given directions to her Bixby home, Appellant arrived with the intention of robbing her. When Ms. Hill allowed Appellant admission into her home, he pulled a knife and demanded money. Ms. Hill was able to convince Appellant she had no money there, but could get some from an ATM machine. So Appellant forced the victim into his car with a knife. Rather than going to the ATM, Appellant took Ms. Hill to a ramshackle cabin in the country, where he proceeded to rape her.

¶4 According to Appellant's admissions, he then left Ms. Hill in the cabin, tied to a chair with plastic zip ties. However, he became nervous he would be caught when Ms. Hill escaped, so he returned to the cabin and began strangling Ms. Hill with his hands and/or a piece of cloth. When this proved unsuccessful—due to Ms. Hill's valiant struggle to fend him off—Appellant stabbed the victim twice in the chest with his knife.

¶5 Appellant left Ms. Hill's lifeless body on the cabin floor, covered by box springs and several mattresses. Authorities found her body six days later. Ms. Hill was disrobed from the waist down, except for one sock. Her sweatshirt and shirt had been pushed up over her head, and her bra, which clasped in the front, had been undone. Her sweat pants and panties were found near her body. The medical examiner found the presence of sperm in Ms. Hill's vagina. He determined Ms. Hill had been wearing panties at or very close to the time of her death and that the panties had remained on her body for several hours after her death.

¶6 After killing Ms. Hill, Appellant proceeded to go on a horrifying crime spree.

---

1. Appellant's Petition in Error was filed on June 17, 2003. His brief was filed March 26, 2004. The State's brief was filed May 18, 2004. The case was submitted to the Court on May 21, 2004. On September 22, 2004, Appellant filed motion to waive his right to Oral Argument, which had been scheduled for September 28, 2004. The motion was granted by this Court on September 23, 2004, and the case was submitted for decision on the briefs.

He used credit and debit cards he had stolen from Ms. Hill to purchase Christmas gifts for his family. Concerned authorities were looking for him, he fled to Missouri, where he car-jacked a family (an elderly woman, younger woman, and a child)[2] three days after Christmas. A massive manhunt followed and Appellant was nearly caught several times. He hid out in the woods for a couple of days and broke into several homes, but was somehow able to stay ahead of police. During one of the burglaries, the homeowner, Forrest Boyd, returned. Appellant killed Boyd by stabbing him several times in the back.

¶ 7 Appellant fled in Boyd's car and made it to Tennessee before the car broke down. He called a towing company. The unlucky driver, Roy Patterson, also wound up being stabbed and killed by Appellant, after the credit card Appellant used to pay for the tow showed it had been stolen. An arrest followed soon after. Appellant has since been tried and convicted of murdering Patterson.

¶ 8 On December 2, 2002, Appellant pled guilty to crimes of First Degree Murder, Kidnapping, and First Degree Rape. He admitted taking Ms. Hill from her home by force, raping her, strangling her, stabbing her, and killing her on December 23, 1999.

### Errors Raised

¶ 9 In proposition one, Appellant claims his death sentence should be vacated or modified because the aggravating circumstances were not charged in an information or indictment, were not subjected to adversarial testing at a preliminary hearing, and were therefore not determined to probably exist by a neutral and detached magistrate. Thus, Appellant claims the District Court never acquired jurisdiction over the aggravating circumstances.

2. Appellant reportedly pushed the female driver out of the car, and drove off with the elderly woman and the young child. He later let them go.

3. This statement also applies to *Apprendi* and *Jones,* both of which were decided before *Ring* and were, in fact, reviewed in *Ring.* Nor does *Sattazahn* change the procedure in Oklahoma.

¶ 10 Appellant's arguments are based upon his reading of the United States Supreme Court's holdings in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Under these cases and the Supreme Court's interpretation of them in *Sattazahn v. Pennsylvania,* 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), Appellant claims aggravating circumstances "operate as the functional equivalent of an element of a greater offense." *See Ring,* 536 U.S. at 609, 122 S.Ct. at 2443, *quoting from Apprendi,* 530 U.S. at 494, n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435.

¶ 11 Appellant thus claims aggravating circumstances—as the functional equivalent of an element of a greater offense—must be charged in an indictment or information (as per *Jones* ) and then, pursuant to Oklahoma law and due process guarantees, be presented and established at a preliminary hearing. Otherwise, Appellant argues, the State violates notice, due process, and constitutional protections against arrest and confinement without probable cause.

¶ 12 We have previously rejected this claim. In *Primeaux v. State,* 2004 OK CR 16, ¶ 16, 88 P.3d 893, 899, the Court made it clear that "*Ring* does not change the procedure in Oklahoma."[3] The Court pointed out that (1) the defendant had received notice of the aggravating circumstances in the bill of particulars, (2) the aggravating circumstances had been presented to a jury, and (3) the jury had been required to find the existence of those aggravating circumstances beyond a reasonable doubt. *Primeaux* also cited to *Johnson v. State,* 1982 OK CR 37, ¶ 10, 665 P.2d 815, 819, which rejected a form of this same argument two decades ago.[4]

4. In addition to *Primeaux* and *Johnson,* variations of the same argument have been made throughout the years and have been rejected by the Court, along with its currently seated members. *See, e.g., Duty v. State,* 2004 OK CR 20, ¶ 20, 89 P.3d 1158, 1162; *Littlejohn v. State,* 2004 OK CR 6, ¶ 16, 85 P.3d 287, 295; *Black v. State,* 2001 OK CR 5, ¶ 93, 21 P.3d 1047, 1077, *cert. denied,* 534 U.S. 1004, 122 S.Ct. 483, 151 L.Ed.2d 396 (2001); *Miller v. State,* 1998 OK CR 59, ¶ 65, 977 P.2d 1099, 1112, *cert. denied,* 528

¶ 13 In *Johnson*, this Court found the procedures used in Oklahoma to inform a defendant of aggravating circumstances did not violate his due process rights under the Fourteenth Amendment or his right under the Sixth and Fourteenth Amendments to be informed of the nature of the charges against him. The Court expressly rejected the notion that Oklahoma law requires a preliminary hearing be held on the bill of particulars, finding there is no such "statutory or constitutional requirement". *Id.*, 1982 OK CR 37 at ¶ 10, 665 P.2d at 819.

¶ 14 *Johnson* pointed out that section 701.10 of our criminal statutes mandates "only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." [5] Accordingly, the Court found our death penalty procedure "eliminates any element of surprise." *Id.*, 1982 OK CR 37 at ¶ 9, 665 P.2d at 819.

¶ 15 Appellant's arguments are more general in nature than they are specific to his case. The essence of Appellant's attack is on the constitutionality of our death penalty sentencing scheme as a whole, rather than a specific attack on how it applies to him in particular. For in the instant case the allegations of the bill of particulars were filed alongside the amended information, more than two years before Appellant's preliminary hearing and arraignment were held.

¶ 16 Appellant was charged with First Degree Murder by Information filed December 30, 1999, about a week after the murder occurred. An Amended Information was filed on February 8, 2000, alleging the murder count along with additional kidnapping and first degree rape counts. A bill of particulars was filed on February 25, 2000, alleging the three aggravating circumstances for which Appellant was later convicted.

¶ 17 Thereafter, an amended bill of particulars was filed June 12, 2002,[6] with one typographic correction from the previous filing. The preliminary hearing was held two and a half months later, on August 27, 2002, and Appellant was bound over on all three charges following a probable cause determination by the magistrate.[7] He was then arraigned on September 10, 2002.[8] He entered his guilty plea on December 2, 2002.

¶ 18 Clearly, there are no constitutional problems with the notice Appellant received. Furthermore, as for the allegations of a deprivation of due process and/or that the aggravating circumstances should have been brought before a magistrate for a probable cause determination, it is significant to note that Appellant is not claiming the murder of Laci Dawn Hill, to which he readily admitted and pled guilty, would not qualify under the three aggravating circumstances for which he was convicted. Quite obviously, the specifics of this particular murder met the requirements of all three aggravating circumstances.

¶ 19 Instead, Appellant is making the legal argument that, despite receiving sufficient notice and despite the fact that the murder satisfied all three aggravating circumstances,

U.S. 897, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999); *Mayes v. State,* 1994 OK CR 44, ¶ 23, 887 P.2d 1288, 1299, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

5. In *Hunter v. State,* 1992 OK CR 19, 829 P.2d 64, we modified this language to a certain extent, finding a bill of particulars must be filed at or before arraignment. At the same time, the trial court may "for good cause shown, extend this time but should use its sound discretion in so doing." *Id.*, 1992 OK CR 19 at ¶ 5, 829 P.2d at 65.

6. In between the filing of the two bills, it appears Appellant was being tried and convicted for murder charges in Tennessee.

7. At the hearing, Appellant did not raise the claim he does today—that due process requires a

preliminary hearing be held on the allegations of the bill of particulars.

8. Appellant thereafter filed a motion to strike the bill of particulars on October 15, 2002, alleging, among other things, that the bill of particulars had not be subjected to a probable cause determination by a magistrate. Appellant also filed on October 15, 2002 a motion to strike the death penalty sentencing procedure as unconstitutional under *Ring v. Arizona* in which most of the arguments here were raised. Both motions were argued before the district court during a motion hearing on November 6, 2002, and both were overruled. (11–6–02 Tr. at 47–50.) At a pretrial hearing held on November 27, 2002, defense counsel argued both motions again, and was, for a second time, overruled. (11–27–02 Tr. at 6–8.)

he is entitled to relief because those circumstances were not taken before a magistrate, but were presented to the fact finder after probable cause had already established that he committed the crimes. We wholeheartedly reject this claim.

¶ 20 First and foremost, Appellant waived any claim of "irregularities" in the preliminary hearing proceedings by pleading guilty. *Stokes v. State,* 1987 OK CR 114, ¶ 6, 738 P.2d 1364, 1365; *Money v. State,* 1985 OK CR 46, ¶ 5, 700 P.2d 204, 206; *Mansfield v. State,* 1976 OK CR 280, ¶ 13, 556 P.2d 632, 634; *Blake v. State,* 1962 OK CR 114, ¶ 22, 375 P.2d 270, 273. It is clear from the plea transcript that Appellant's counsel explained the repercussions his pleading guilty would have on this claim. By pleading guilty to the crimes alleged, the procedural issues relating to the preliminary hearing became, for all intents and purposes, moot.

¶ 21 Second, we continue to find *Ring,*[9] *Apprendi,*[10] and *Jones*[11] cannot—and should not—be interpreted so broadly as to require the State of Oklahoma to change its procedures and law so that aggravating circumstances must now be included in an indictment or information and presented to a magistrate at the preliminary hearing. It is one thing to say that aggravating circumstances operate as the "functional equivalent"

of an element of a greater offense for the purposes of being found by a jury beyond a reasonable doubt, but quite another to say they are *in fact* an element which must be pled in every State's charging document and then established at a preliminary hearing. In Oklahoma, the purpose of a preliminary hearing is to establish that a crime was committed and probable cause that the defendant committed the crime. *See* 22 O.S.2001, § 258. That was done here.

¶ 22 Third, we find Appellant received constitutionally sufficient notice in this case and was in no way denied due process when a magistrate bound him over for trial at the preliminary hearing on charges of murder, kidnapping, and rape—charges to which he had already confessed. *See Sealy v. State,* 1986 OK CR 141, ¶ 7, 738 P.2d 521, 522 ("[A] defendant charged with first degree murder in Oklahoma need only consult the statute to ascertain all possible penalties he faces.") Furthermore, it cannot be said that the failure to have a preliminary hearing on the aggravating circumstances deprived the District Court of jurisdiction. *Cartwright v. State,* 1985 OK CR 4, ¶ 21, 695 P.2d 548, 552; *see also U.S. v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) ("defects in an indictment do not deprive a court of its power to adjudicate a case.")[12]

9. In *Ring,* the Supreme Court pointed out "Ring does not contend that his indictment was constitutionally defective." 536 U.S. at 597, n. 4, 122 S.Ct at 2437. Indeed, *Ring* was concerned with a sentencing scheme whereby a trial judge rather than a jury made making findings of fact on aggravating circumstances that made one eligible for the death penalty.

10. *Apprendi,* a 5 to 4 decision, was not a capital case. The question there was whether a trial judge could make a factual finding during sentencing following a guilty plea that would enhance a sentence. Again, the Supreme Court made it clear the defendant was not asserting a constitutional claim based on an omission in the indictment: "We thus do not address the indictment question separately today." 530 U.S. at 477, n. 3, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435. In so noting, the Court also pointed out that the due process rights under the Fifth Amendment, made applicable to the States via the Fourteenth Amendment, had never been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury. *Id.* However, to somewhat confuse the issue presented here, the majority opinion later quoted "indictment" language from *Jones* to support its conclusion that Apprendi had a constitutional right to have a jury decide any facts that would increase the maximum penalty for a crime. *See* 530 U.S. at 476, 120 S.Ct. at 2355 (quoting *Jones* for the proposition that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.")

11. *Jones* was interpreting a federal carjacking statute and, again, was primarily concerned with the issue of sentencing, i.e., a statute that could be interpreted to allow a judge, rather than a jury, to decide facts that would increase punishment. The issue of "indictment" was discussed tangentially for purpose of notice issues, which are overcome by Oklahoma's requirement that the bill of particulars be filed at or before arraignment, unless good cause is shown.

12. Insofar as Appellant's argument that having aggravating circumstances tested for probable

■ ¶ 23 Furthermore, it must be reiterated that Appellant waived his right to a jury trial on all these issues when he entered a plea of guilty and agreed to a non-jury trial on the issue of punishment. To have standing to raise issues pursuant to *Ring, Apprendi*, and *Jones*, a defendant must make a demand for a jury trial on the issues. Appellant waived that right in this case. Therefore, this proposition is denied.

■ ¶ 24 In proposition two, Appellant claims Oklahoma's heinous, atrocious, or cruel aggravating circumstance violates the Eighth and Fourteenth Amendments to the U.S. Constitution by failing to properly channel the fact finder's discretion in imposing the death penalty. Appellant claims this Court's interpretation of the aggravator has become too broad, that our requirement that the murder be preceded by "torture or serious physical abuse" in order for the aggravator to apply has been interpreted to require no more than conscious suffering. He argues that we have inappropriately focused on the victim's awareness to establish torture while ignoring the "volitional acts of the defendant." He further argues there is no evidence he desired that Ms. Hill consciously suffer or that he engaged in acts for purpose of causing her pain. He claims his inefficiency in accomplishing his goal of killing the victim is an arbitrary factor that does not help to narrow the sentencer's discretion.

¶ 25 These are interesting arguments, more of a general attack on the aggravating circumstance than one specific to Appellant. But they do not require any relief here, for the facts of this case clearly establish Laci Dawn Hill's murder was heinous, atrocious, and cruel and her death was preceded by both torture (in the infliction of both "great physical anguish" and "extreme mental cruelty") and serious physical abuse (in that the victim experienced "conscious physical suffering" prior to her death). *See DeRosa v. State*, 2004 OK CR 19, ¶ 96, 89 P.3d 1124, 1156 (where the Court used language from various cases from this Court to modify the uniform jury instruction for this aggravator).

¶ 26 Moreover, this Court has rejected similar attacks upon the constitutionality of this aggravating circumstance. *See Lockett v. State*, 2002 OK CR 30, ¶ 40, 53 P.3d 418, 430; *Le v. State*, 1997 OK CR 55, ¶¶ 41–45, 947 P.2d 535, 552–53, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). *See also Hooker v. State*, 1994 OK CR 75, ¶ 44, 887 P.2d 1351, 1364–65, *cert. denied*, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995); *Revilla v. State*, 1994 OK CR 24, ¶ 42, 877 P.2d 1143, 1154–55, *cert. denied*, 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Berget v. State*, 1991 OK CR 121, ¶¶ 29–34, 824 P.2d 364, 372–74, *cert. denied*, 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). In each of these cases we found the instructions given regarding the heinous, atrocious or cruel aggravating circumstance sufficiently narrow its application and pass constitutional muster. Appellant has not persuaded us to hold otherwise.

### MANDATORY SENTENCE REVIEW

¶ 27 Pursuant to 21 O.S.2001, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the judge's finding of the aggravating circumstances set forth in 21 O.S.2001, § 701.12.

¶ 28 Turning to the second portion of this mandate, the trial judge found the existence of three aggravating circumstances: (1) the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; (2) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) the murder was especially heinous, atrocious, or cruel. We find sufficient evidence exists in this record in order to support the trial judge's findings regarding all three aggravating circumstances.

■ ¶ 29 The State presented the following "aggravating" evidence in support of

---

cause at a preliminary hearing will provide a check on prosecutorial discretion in filing charges, we simply point out that it is common-

place for criminal defendants to file motions to strike the bill of particulars in order to test the merits thereof.

the death sentence sought: Appellant removed Laci Dawn Hill from her home by force, brandishing a knife; he then took Ms. Hill to an abandoned cabin, where he proceeded to rape her; he then bound her to a chair and left the cabin; in an attempt to cover his tracks and prevent discovery of the rape and kidnapping, he reentered the cabin and proceeded to strangle the victim; the victim's desperate struggle and efforts to fend off the attack caused Appellant to apply the use of a piece of cloth to accomplish death; this failed; Appellant then stabbed the victim twice in the chest, which caused her to suffer pain and ultimately bleed to death; several minutes may have elapsed before the victim became unconscious; after the murder, Appellant removed the victim's panties for some unknown reason; Appellant then went on a vicious crime spree in an attempt to escape capture; this included the stabbing murders of two more victims—one in Missouri and one in Tennessee.

¶ 30 Appellant presented the following "mitigating" evidence.[13] Appellant's parents divorced when he was three. His mother worked two jobs and often left him in the charge of his sister, just two years his senior, from the time he was seven. Consequently, Appellant had little supervision, but developed a lot of animosity toward his older sister. Appellant was physically abused by his mother, and his father had little involvement in his life. Appellant felt abandoned by his father and resented him. He was an angry child.

¶ 31 Appellant performed poorly in school, fought frequently, was truant often, and sometimes ran away. He failed first and seventh grades. He quit school in the ninth grade, although he later earned his GED in prison. He began smoking marijuana and drinking alcohol at the age of fourteen. By the next year, he was using crack, powder cocaine, and LSD. Appellant's mother remarried when he was fifteen. Appellant claimed to have been abused by his stepfather and his maternal uncle. He ran away from home several times.

¶ 32 As a teenager, Appellant was arrested on charges of burglary, theft, and auto theft and was sent into a drug rehab facility. He was an alcoholic by the age of sixteen. He later stole a car at the business where his father worked and wrecked it in Florida. He suffered serious injuries as a result, including a collapsed lung and vertebral damage. At the age of seventeen, he was arrested for breaking and entering and served six months in prison. At eighteen, he was arrested for writing bad checks, but was given probation. He was then caught stealing a truck, and served two additional years in prison in Ohio. He violated parole by stealing a motorcycle and wrecking it, resulting in more prison time.

¶ 33 At this point, Appellant had his first serious relationship—with Kim Bowen in West Virginia. The relationship lasted about four years. Ms. Bowen testified Appellant was the love of her life. He lived with her for three years and was good with her children. He had many great qualities, but he also had severe mood swings. Appellant would get angry and agitated. He would cry. Bowen convinced Appellant to see a psychiatrist. He was then diagnosed with Bipolar Disorder, with episodes of depression, crying spells, insomnia, hopeless, and suicidal thoughts. His impulsivity improved while he was on lithium, but as is so often the case he decided to stop taking the drug. Following that, he cheated on Bowen and impregnated a young girl. He has had little to do with his own child. In 1997, he was again arrested, this time for trespassing and on an outstanding warrant.

¶ 34 He later met and married Trina Thacker, and the couple lived in Locust Grove. Appellant's landlord testified how Appellant treated Trina, Trina's daughter, and the landlord kindly, how she trusted Appellant and how he "did everything for me that he could." She described him as very kind and very loving. But soon afterward, the marriage began deteriorating; Appellant lost his job, and was deeply in debt. He

---

13. We realize that mitigating evidence often has aggravating components. Furthermore, much of this mitigating evidence here was self-reported by Appellant. However, his mother and other witnesses confirmed significant portions of it.

became desperate and impulsive and began experiencing dramatic mood swings.

¶ 35 Appellant's mental examinations indicate he is of average intelligence. His higher cognitive functions are generally intact,[14] and his judgment and impulse control were not imminently impaired.

¶ 36 An expert testified that the instant crime was committed while Appellant was suffering from extreme mental and emotional disturbance due to his Bipolar Disorder–Hypomanic Episode, which is a recognized mental illness in the mental health community. This is a lifelong condition, which is episodic, meaning there are times when the person can go back to a normal state. Persons with this disorder fail to deliberate about the consequences of their actions; they just do things without reflection or reason. The condition tends to get worse over time, and Appellant was described as someone "who has developed a pretty limited number of coping mechanisms...." Furthermore, according to his expert, there was no indication Appellant was unable to understand the nature and wrongfulness of his actions when he committed them.

¶ 37 Appellant has adjusted well to the highly structured prison environment, but might not do so well in a medium security structure. He has had two incidents where he showed his anger, but prison authorities resolved these through conversation. A minister visits Appellant regularly and testified he has had a religious conversion. Members of his family testified that they love him, and that his life has value to them.

¶ 38 After reviewing the record and carefully weighing the aggravating circumstances and the mitigating evidence, along with the errors alleged in this appeal, we find the death sentence to be factually substantiated and appropriate. We cannot say the death sentence is being imposed under the influence of passion, prejudice, or any other arbitrary factor.

14. Appellant reportedly suffered a head injury by falling from a moving car when he was approxi-

## DECISION

¶ 39 The Judgments and Sentences are hereby **AFFIRMED.**

JOHNSON, P.J., LILE, V.P.J. and STRUBHAR, J.: concur.

CHAPEL, J.: concurs in result.